[Cite as *In re A.R.*, 2026-Ohio-2577.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF:<br>A.R., L.R., & J.R. | Case Nos. 2026 CA 00009, 2026 CA 00010, & 2026 CA 00011<br><br>Opinion and Judgment Entry<br><br>Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. C2023-0371, C2023-0372, & C2023-0373<br><br>Judgment: Affirmed<br><br>Date of Judgment Entry: July 6, 2026 |

**BEFORE:** William B. Hoffman; Craig R. Baldwin; Robert G. Montgomery, Judges

**APPEARANCES:** Kenneth W. Oswalt, Assistant Prosecuting Attorney, for Plaintiff-Appellee, Licking County Job and Family Services; Jermaine L. Colquitt, for Appellant, Mother, Mark Poole, Guardian ad Litem.

*Hoffman, P.J.*

{¶1} In Licking App. Nos. 2026-CA-00009, 2026-CA-00010, and 2026-CA-00011, appellant L.M. ("Mother") appeals the January 6, 2026 Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her three minor children ("Child 1," "Child 2," and "Child 3," individually; "the Children," collectively) and granted permanent custody of the Children to appellee Licking County Job and Family Services ("LCJFS" or "the Agency").

STATEMENT OF THE FACTS AND CASE

{¶2} Mother and K.R. ("Father") are the biological parents of the Children. Father is deceased. Mother has had several periods of LCJFS involvement since 2018, when she lost custody of her oldest child. With regard to the Children, Mother voluntarily participated in LCJFS services, but was unable to remedy the Agency's concerns which resulted in the filing of the complaint in the instant action.

{¶3} Mother was pulled over on a routine traffic stop on September 25, 2023. Two of the Children were in the vehicle. During a search of the vehicle, the officer located drug paraphernalia, marijuana, Seroquel, and methamphetamines in a box on the floorboard of the vehicle and a taser strapped to the steering column. Mother admitted to using methamphetamines the previous night and the officer suspected she was still under the influence.

{¶4} Law enforcement subsequently sent a report to LCJFS. Prior to the traffic stop, the Agency had received a number of referrals involving Mother and the Children, but had been unable to locate and communicate with Mother despite attempts to do so. Brandi Huffman, an intake caseworker, made contact with Mother on October 5, 2023. Mother and the Children were at a park. Huffman found Mother with her head, face down, on a picnic table bench and Child 3 strapped into a booster seat, which was situated on top of the picnic table. Child 1 and Child 2 were running around the park. Mother admitted to using methamphetamines. She informed Huffman she had been evicted from her home, was unemployed, had nowhere to stay with the Children, and had her car impounded.

{¶5} Upon LCJFS's request, the trial court granted an emergency ex-parte order of removal of the Children on October 5, 2023. The following day, October 6, 2023, LCJFS

filed complaints, alleging the Children were dependent and requesting temporary legal custody be granted to LCJFS. Following a hearing on October 6, 2023, the Children were placed in the emergency shelter care custody of LCJFS. At an uncontested adjudicatory hearing on November 28, 2023, the trial court found the Children to be dependent. The trial court immediately proceeded to disposition and placed the Children in the temporary custody of LCJFS.

{¶6} On September 3, 2024, LCJFS filed a motion to modify disposition, requesting a 6-month extension of temporary custody. Via Judgment Entry filed September 10, 2024, the trial court extended temporary custody until April 5, 2025. On February 13, 2025, LCJFS filed a second motion to modify disposition, requesting a 6-month extension of temporary custody. Via Judgment Entry filed February 27, 2025, the trial court extended temporary custody until October 5, 2025. LCJFS filed a motion for permanent custody on September 9, 2025. Mother filed a motion for custody on October 20, 2025.

{¶7} The trial court conducted a hearing on LCJFS's motion for permanent custody on November 5, 2025. The following evidence was presented at the hearing:

{¶8} Kati Potts was the ongoing caseworker originally assigned to assist Mother with reunification services. Potts established a case plan outlining the Agency's concerns and objectives identified to meet the goal of reunification. LCJFS caseworker Taelor Murray replaced Potts as the ongoing family caseworker in September, 2025, when Potts left the Agency. Murray remained the caseworker throughout the remainder of the proceedings.

{¶9} Mother's case plan required her to obtain and maintain stable housing and income; maintain financial resources to meet the household needs; verify her income with

paystubs; participate in a drug and alcohol abuse assessment and follow all recommendations; refrain from the use of illegal drugs and alcohol; abstain from developing relationships with individuals who use illegal drugs or alcohol; and complete random drug screens. In addition, Mother was instructed to keep LCJFS advised of her contact information and any changes regarding her residence and/or individuals residing with her. Mother was to refrain from confrontational behavior or violence. Mother's case plan also required her to complete a mental health assessment and follow all recommendations; successfully complete parenting education; and sign all release of information requests.

{¶10} Mother initially complied with her case plan objectives towards reunification. She completed a mental health assessment and participated in weekly counseling and treatment with Ashley Hashman at Autumn Behavioral Health. Mother saw a psychiatrist and was prescribed medication to address her bipolar disorder, stabilize her moods, and address her attention deficit disorder. Mother obtained employment. However, she struggled to find housing appropriate for the Children despite housing options and assistance offered by LCJFS. Mother made attempts to improve her parenting skills. In December, 2024, LCJFS assigned Winston Spiker as Mother's parenting mentor. Mother consistently attended visitation with the Children. Mother's visits transitioned to outside the Agency with Spiker's supervision, however, the visits returned to the Agency after Mother had a positive drug screen.

{¶11} Mother continued to use illegal drugs and had a number of positive drug screens prior to and throughout the matter. Mother tested positive for cocaine on July 12, 2022; positive for amphetamine and methamphetamine on May 20, 2022, June 7, 2022, June 10, 2022, October 11, 2022, January 13, 2023, May 15, 2023, May 24, 2023,

and October 13, 2023; positive for amphetamine, methamphetamine, and THC on April 22, 2025, August 11, 2025, and August 20, 2025; and positive for THC on September 20, 2024; November 15, 2024, May 7, 2025, May 21, 2025, June 24, 2025, and June 30, 2025.

{¶12} The Children have been in the same foster placement since their initial removal on October 5, 2023. When the Children first arrived, they were anxious, tired, and hungry. Child 1 and Child 2 needed extensive dental care. Child 1 disclosed prior sexual abuse and had to be re-toilet trained. Child 3 was born with methamphetamine in his system and was displaying some behavioral issues. Child 3 is waiting for an appointment for further assessment. Child 3 is also developmentally delayed, and was not walking or talking when initially placed in foster care. The Children have food insecurity issues. The foster parents are addressing all of the Children's issues and needs and have sought the necessary services.

{¶13} The Children are bonded with each other, their foster caregivers, and their foster caregiver's extended family. The foster caregivers are bonded with the Children. They have maintained regular contact with Mother. The Children have regular phone calls and visits with Mother. The foster mother reported some regression and behavioral issues following the Children's visits with Mother. The foster caregivers wish to adopt the Children.

{¶14} At the inception of the case, Mother provided LCJFS with the name of maternal grandmother, Pamela Chubb, as potential kinship placement for the Children. LCJFS deemed Chubb inappropriate due to her prior noncompliance with Agency safety planning and due to concerns she previously allowed the Children to go with and to be cared for by Mother when Mother was under the influence. Approximately two weeks prior to the permanent custody hearing, Mother provided LCJFS with the name of a friend

who is a foster parent. LCJFS was unable to make contact with the individual due to a lack of contact information. No other relative or kinship persons contacted the Agency expressing interest in the placement of the Children. Mother did not identify any other potential placement. No individual filed a motion for legal custody.

{¶15} Mark Poole, the Guardian ad Litem, filed his supplemental report on October 29, 2025, and testified at the permanent custody hearing. He repeatedly recommended permanent custody of the Children be granted to LCJFS. The GAL explained his recommendation was based upon Mother's positive drug screens, housing instability, Mother's minimal engagement and/or progress on her sobriety, Mother's inability to care for the Children, and the Children's immediate need for permanency. The GAL observed the Children with Mother at visits, and interviewed Mother, the Children, and the foster caregivers. The GAL also attempted to visit Mother's residence.

{¶16} Via Judgment Entry filed January 6, 2026, the trial court terminated Mother's parental rights with respect to the Children and granted permanent custody of the Children to LCJFS. The trial court found the Children cannot be placed with Mother within a reasonable time or should not be placed with her. The trial court found R.C. 2151.414(E)(1), (E)(2), (E)(4), (E)(15), and (E)(16) applied. The trial court further found it was in the best interest of the Children to grant permanent custody to LCJFS as the Children had been in the temporary custody of LCJFS for a continuous 23-month period. The trial court also denied Mother's motion for custody.

{¶17} It is from this judgment entry Mother appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH MOTHER WITHIN A REASONABLE TIME PURSUANT TO R.C. 2151.414(B)(1)(a), AS THE FINDINGS UNDER R.C. 2151.414(E)(1), (E)(2), (E)(4), (E)(15), AND (E)(16) ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT'S BEST-INTEREST DETERMINATION UNDER R.C. 2151.414(D)(1) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT ERRED IN APPLYING R.C. 2151.414(D)(2).

{¶18} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II, III

{¶19} For ease of discussion, we elect to address Mother's three assignments of error together.

{¶20} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. (Citation omitted.) *In re D.R.*, 2024-Ohio-1819, ¶28 (5th Dist.). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, syllabus (1978).

**{¶21}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶22}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

**{¶23}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. Once the trial court determines any one of the circumstances applies, it must then establish it is in the best interest of the child to grant permanent custody to the agency. *In re D.M.*, 2020-Ohio-3273 (1st Dist.).

**{¶24}** Here, the trial court found the Children could not be placed with Mother within a reasonable time or should not be placed with Mother and, although discussed

within its best interest analysis, the trial court also found the Children had been in the Agency's custody for two years or longer. January 6, 2026 Judgment Entry at p. 13. Once the trial court found any one of the R.C. 2151.414(B) factors applied, it was not necessary for the court to make further findings regarding the other factors. See *In re N.W.*, 2008-Ohio-297, ¶ 9 (10th Dist.) ("R.C. 2151.414(B)(1) requires the existence of only one of the circumstances in R.C. 2151.414(B)(1)."). "Even though R.C. 2151.414(B)(1) requires the existence of only one of the circumstances in R.C. 2151.414(B)(1), a trial court may cite more than one factor in the alternative." *Id.*

{¶25} A trial court's 12-of-22 finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 2008-Ohio-5458, ¶ 45 (5th Dist.). The "12-of-22" provision reflects the legislature's deliberate balance between reunification efforts and the child's need for timely permanence. *In re C.W.*, 2004-Ohio-6411, ¶ 22. Once the statutory time has elapsed, the focus properly shifts from parental opportunity to the child's need for stability. *Id.* at syllabus.

{¶26} We further find the record also supports the trial court's finding the Children could not be placed with Mother within a reasonable time or should the Children be placed with her. As set forth in our Statement of the Facts and Case, supra, Mother failed to remedy the problems which initially caused the Children to be placed outside her home. Mother had a history of substance abuse and criminal activity. Mother was unable to maintain her sobriety, repeatedly testing positive for methamphetamine and other illegal substances. Mother did not complete or meaningfully engage in substance abuse treatment. Mother failed to obtain and maintain safe and stable housing.

{¶27} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including,

but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶28} We find the trial court's finding it was in the Children's best interest to grant permanent custody to LCJFS was not against the manifest weight of the evidence. With regard to R.C. 2151.414(D)(1)(a), the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, the evidence established the Children were together in the same foster placement and the placement was going well. The foster parents met all of the Children's needs and wished to adopt the Children. The Children were bonded with each other and their foster parents. The evidence relative to R.C. 2151.414(D)(1)(c), the custodial history of the child, showed the Children were removed from Mother's care on October 5, 2023. The Children remained in the Agency's custody throughout the course of the proceedings. With respect to R.C. 2151.414(D)(1)(d), the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody, LCJFS was unsuccessful in its attempt to find kinship placement as no appropriate relatives were available. Only one of the R.C. 2151.414(D)(1) factors needs to be resolved in favor of the award of permanent custody. See *In re Za.S.*, 2023-Ohio-1477, ¶ 60 (8th Dist.).

**{¶29}** With respect to Mother's third assignment of error, assuming, arguendo, the trial court erred in applying R.C. 2151.414(D)(2), we find any error was harmless. "R.C. 2151.414(D)(1) and 2151.414(D)(2) are 'alternative means' for determining whether permanent custody is in a child's best interest." *In re R.D.*, 2022-Ohio-4519, ¶ 51 (8th Dist.), citing *In re J.P.*, 2019-Ohio-1619, ¶¶ 39-40 (10th Dist.).

**{¶30}** Based upon the foregoing, Mother's first, second, and third assignments of error are overruled.

**{¶31}** The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

**{¶32}** Costs to Appellant.

By: Hoffman, P.J.

Baldwin, J. and

Montgomery, J. concur.